UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MONIQUE DANIELLE W.,

        Plaintiff,

  -v-                                          5:18-CV-184

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LAW OFFICES OF KENNETH<br>   HILLER, PLLC<br>Attorneys for Plaintiff<br>6000 North Bailey Avenue, Suite 1A<br>Amherst, NY 14226 | KENNETH R. HILLER, ESQ.<br>JUSTIN M. GOLDSTEIN, ESQ. |
| OFFICE OF REGIONAL GENERAL COUNSEL<br>   SOCIAL SECURITY ADMINISTRATION<br>   REGION II<br>Attorneys for Defendant<br>26 Federal Plaza, Room 3904<br>New York, NY 10019 | PRASHANT TAMASKAR, ESQ.<br>Special Ass't United States Attorney |

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## **I. INTRODUCTION**

     Plaintiff Monique Danielle W.[1] ("Monique" or "plaintiff") brings this action seeking

review of defendant Commissioner of Social Security's ("Commissioner" or "defendant") final

---

[1] In accordance with a May 1, 2018 memorandum issued by the Judicial Conference's Committee on Court Administration and Case Management and adopted as local practice in this District, only claimant's first name and last initial will be used in this opinion.

decision denying her applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Both parties have filed their briefs, and defendant has filed the Administrative Record on Appeal. The motions will be considered on the basis of these submissions without oral argument.[2]

## II. **BACKGROUND**

On November 18, 2014,[3] Monique filled applications for SSI and DIB alleging that her various physical and mental impairments rendered her disabled beginning on July 11, 2012. R. at 216-30, 242, 246.[4] Plaintiff's consolidated claim was initially denied on January 26, 2015. *Id*. at 148-55.

At Monique's request, a video hearing was held before Administrative Law Judge ("ALJ") David J. Begley on September 20, 2016. R. at 94-123. Plaintiff, represented by non-attorney James M. Redmond, appeared and testified. *Id*. The ALJ also heard testimony from Vocational Expert ("VE") Alissa Smith. *Id*.

Thereafter, the ALJ issued a written decision denying Monique's application for benefits through January 11, 2017, the date of his decision. R. at 10-24. The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. *Id*. at 1-3.

---

[2] Pursuant to General Order No. 18, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.

[3] The parties refer to plaintiff's filing date as October 21, 2014, but the distinction is immaterial.

[4] Citations to "R." refer to the Administrative Record. Dkt. No. 9.

- 2 -

## III. **DISCUSSION**

### A. **Standard of Review**

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB,* 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951)).

If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive. *See Williams*, 859 F.2d at 258. Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Martone v.*

*Apfel*, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

## B. <u>Disability Determination—The Five-Step Evaluation Process</u>

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id*. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. *Id*. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. *Id*. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of

impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). *Id*. §§ 404.1520(d), 416.920(d); *see also id.* Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." *Martone*, 70 F. Supp. 2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity ("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996) (citing *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. *Perez*, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g).

The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. *Perez*, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2).

"[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual

functional capacity." *Poupore*, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. ALJ's Decision

Applying the five-step disability determination process, the ALJ found that: (1) Monique had not engaged in any substantial gainful activity since July 11, 2012, the alleged onset date; (2) plaintiff's myalgia/arthralgia, obesity, depression, and anxiety were severe impairments within the meaning of the Regulations; and (3) these impairments, whether considered individually or in combination, did not meet or equal any of the Listings. R. at 12-14.

At step four, the ALJ determined that Monique's impairments caused exertional, non-exertional, and environmental limitations. R. at 15-16. In particular, the ALJ found that plaintiff retained the RFC to:

> perform light work . . . except [she] should not be expected to climb ladders, ropes or scaffolds, but she may occasionally perform activities that require her to climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. Additionally, [plaintiff] should avoid concentrated exposure to extreme cold, to humidity and wetness. She should avoid hazardous machinery, unprotected heights and open flames. [Plaintiff] is further limited to simple, routine and repetitive tasks, and she should have only occasional interaction with coworkers, supervisors and the general public.

*Id*.

Next, the ALJ determined that these limitations precluded Monique from performing her past relevant work as a "data entry clerk," as a "telephone solicitor," or as a "cashier/checker." R. at 22.

However, the ALJ found that Monique's RFC, considered together with her age and education, allowed her to perform jobs such as "price marker," "routing clerk," and "garment sorter." R. at 22-23. Because these jobs fit in with plaintiff's assessed limitations and were

present in sufficient numbers in the national economy, the ALJ concluded plaintiff was not disabled during the relevant time period. *Id*. at 23-24. Accordingly, the ALJ denied plaintiff's application for benefits.

### D. Monique's Appeal

Monique contends the ALJ's rejection of her fibromyalgia ("FM") as a "severe" impairment at step two "tainted" the entire sequential analysis. Pl.'s Mem. at 13.[5] The Commissioner responds that the ALJ evaluated plaintiff's alleged FM using the appropriate standards and guidance set forth in Social Security Ruling ("SSR") 12-2p.

At step two, the ALJ must determine whether a claimant has one or more "severe" impairments that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c). These so-called "basic work activities" include "walking, standing, sitting, lifting, carrying pushing, pulling, reaching, handling, seeing, hearing, speaking, understanding, remembering and carrying out simple instructions, using judgment, and responding appropriately to supervision, co-workers, and usual work situations." *Brown v. Comm'r of Soc. Sec.*, 2017 WL 2312914, at *5 (N.D.N.Y. May 26, 2017) (Suddaby, J.).

As a general matter, this step of the sequential evaluation process sets a low bar that is intended only to screen out disability claims based on *de minimis* impairments. *See, e.g.*, *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 152 (N.D.N.Y. 2012) (Kahn, J.) (adopting Report & Recommendation of Bianchini, M.J.).

Even so, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment," is insufficient to render a

---

[5] Pagination corresponds to CM/ECF.

condition "severe" within the meaning of the Regulations. *Zenzel,* 993 F. Supp. 2d at 152 (quoting *Coleman v. Shalala*, 895 F. Supp. 50, 53 (S.D.N.Y. 1995)).

Rather, the burden at this step falls on the claimant to identify how the particular symptomatology stemming from the impairment claimed to be "severe" actually works to "significantly limit" his physical or mental ability to complete "basic work activities." *Lake v. Colvin*, 2016 WL 2757750, at *4 (N.D.N.Y. May 12, 2016).

Monique's principal argument on appeal is that the ALJ improperly rejected her FM diagnosis at step two. According to plaintiff, this early-stage error caused a cascade of problems at the later steps of the analysis. The Commissioner responds that the ALJ properly rejected plaintiff's claim because, in essence, her treatment providers failed to rule out other possible diagnoses. Def.'s Mem. at 7-8.

Fibromyalgia is an "elusive and mysterious" disease. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) (Posner, J.). "Its cause or causes are unknown, there is no cure and, of greatest importance to disability law, its symptoms are entirely subjective." *Id*. Unlike the vast majority of other impairments that come up in disability proceedings, "[t]here are no laboratory tests for the presence or severity of fibromyalgia." *Id*.; *see also Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) ("[T]here are no objective tests which can conclusively confirm the disease." (citation omitted)).

"In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions." *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 45 (2d Cir. 1991) (quoting *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 817 (6th Cir. 1988)).

Instead, "[t]he principal symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch." *Sarchet*, 78 F.3d at 306.

Clearly, then, the disease is a challenging one to evaluate in the disability context. After all, "these symptoms are easy to fake." *Sarchet*, 78 F.3d at 307. However, in an attempt to bring some more analytical rigor to bear on the problem, the Commissioner has promulgated Social Security Ruling ("SSR") 12-2p, which sets forth explicit guidance on how to evaluate a claimant's alleged FM.

SSR 12-2p "sets forth the following requirements for finding that fibromyalgia is a medically determinable impairment: (1) a physician has diagnosed fibromyalgia; (2) the physician has provided evidence described either by the 1990 American College of Rheumatology (ACR) criteria or the 2010 ACR Preliminary Diagnostic Criteria; and (3) the physician's 'diagnosis is not inconsistent with other evidence in the person's case record.'" *Casselbury v. Colvin*, 90 F. Supp. 3d 81, 93 (W.D.N.Y. 2015) (quoting SSR-12-p, 2012 WL 3104869, at *2 (July 25, 2012)).

Under the 1990 ACR criteria, a person must show: (1) "[a] history of widespread pain—that is, pain in all quadrants of the body (the right and left sides of the body, both above and below the waist) and axial skeletal pain (the cervical spine, anterior chest, thoracic spine, or low back—that has persisted (or that persisted) for at least 3 months," though the pain "may fluctuate in intensity and may not always be present"; (2) "[a]t least 11 positive tender points on physical examination," provided these points are "found bilaterally" and

"both above and below the waist"; and (3) "[e]vidence that other disorders that could cause the symptoms or signs were excluded."

Alternatively, under the 2010 ACR criteria a person must show: (1) "[a] history of widespread pain" as defined above; (2) "[r]epeated manifestations of six or more FM symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome" and (3) "[e]vidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded."

Finally, to show that other possible disorders were excluded, SSR 12-2p indicates that "it is common in cases involving FM to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs. Laboratory testing may include imaging and other laboratory tests (for example, complete blood counts, erythrocyte sedimentation rate, anti-nuclear antibody, thyroid function, and rheumatoid factor."

The ALJ concluded that Monique's FM was a "nondeterminable impairment for the purpose of disability review in accordance with SSR 12-2p." R. at 13. According to the ALJ, plaintiff's (1) various treatment providers diagnosed her with FM based solely "on her reported history of an initial diagnosis" and (2) evidence failed to show that other causes for her symptoms were considered and excluded. *Id*. In the ALJ's view, plaintiff's FM diagnosis was "essentially diagnosis by repetition." *Id*.

Upon review, this conclusion amounts to reversible error. At the outset, it seems suspect to appear to discount a claimant's fibromyalgia—a disease characterized by the subjective experience of constant pain and tenderness—merely because a claimant kept

telling treating providers about it.  *Cf. Durodoye v. Comm'r of Soc. Sec.*, 2018 WL 1444212, at *5 (N.D.N.Y. Mar. 20, 2018) (Hummel, M.J.) (rejecting ALJ's conclusion that claimant's FM was not medically determinable where plaintiff self-reported an initial diagnosis and where physicians later assessed the condition).

Indeed, other courts have rejected the notion that a physician's diagnosis of FM can be discounted merely because it is based, in part or possibly even in whole, on a claimant's self-report of a prior FM diagnosis.  *See, e.g.*, *Buell v. Berryhill*, 716 F. App'x 600, 602 (9th Cir. 2017) (memorandum disposition) (holding claimant's physician "appropriately relied upon [her] reports in diagnosing [her] with fibromyalgia, and the fact that he did so is not a clear and convincing reason for discrediting his diagnosis").

But even if the ALJ's comment were construed as a wholly benign one, it appears to be incorrect.  Contrary to the ALJ's observation, the record repeatedly suggests that various medical professionals went beyond just accepting Monique's self-diagnosis.  Instead, these providers conducted examinations that produced results consistent with FM.[6]

Take for example a January 19, 2015 consultative physical examination by Seema Khaneja, M.D.  R. at 623-27.  Although this document does note that plaintiff self-reported a diagnosis of fibromyalgia going all the way back to 2006, Dr. Khaneja's actual examination found a total of eighteen FM trigger points, *id*. at 625-26, and the diagnosis included fibromyalgia, *id*. at 627.  This looks less like a diagnosis based solely on Monique's self-reported history and more like a diagnosis based on a medical examination.

The same is true in a progress note dated January 14, 2013 from Raj Bala Thakur,

---

[6] How, if it all, this is different from the "myalgia/arthralgia" the ALJ assessed is not explained.

M.D., a physician at Sawgrass Pain Treatment Center. R. at 559-60. There, Dr. Thakur conducted a physical examination that found "diffuse tenderness" across multiple points and concluded that plaintiff's pain was "consistent with fibromyalgia." *Id*. at 560.

To the extent the ALJ faults her various treating providers for failing to rule out *any* other possibilities, that too appears to be a misreading of the record. For instance, June 19, 2012 progress notes from Dr. Thakur indicate that a physical exam revealed "multiple tender points" and that plaintiff has also "been evaluated by rheumatology." R. at 557.

Further, an April 28, 2016 progress note from Janet A. Pennellavaughan, a Nurse Practitioner at the Pain Treatment Center of the University of Rochester, assessed "multiple tender points" and noted that x-ray imaging studies conducted on April 15, 2016 revealed nothing that would satisfactorily explain the ongoing pain. *Id*. at 687-89.

Prior to that, a February 17, 2016 progress note from Nurse Practitioner Pennellavaughan at the Pain Treatment Center references a February 9, 2016 imaging study of Monique's lumbar spine. R. at 691. Again, though, this imaging study, along with a lumbar MRI done in 2007, indicated nothing of apparent significance. *Id*.

At the very least, these imaging studies and the referral to rheumatology indicate that Monique's providers made some attempt track down an explanation for her pain and tenderness beyond just relying on a "diagnosis by repetition." *Cf. Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016) (faulting the ALJ for rejecting claimant's FM as medically determinable diagnosis where claimant pointed to evidence that "includes many reports of symptoms" and "details tests that her doctors conducted while looking for explanations").

Notably, "SSR 12-2p directs an ALJ to take additional steps, such as recontacting the claimant's treating physicians, when the record lacks adequate information to determine

whether the claimant has a medically determinable impairment of fibromyalgia." *Cooper v. Comm'r of Soc. Sec.*, 2019 WL 1109573, at *4 (W.D.N.Y. Mar. 11, 2019). Under the particular circumstances of this case, the ALJ should have re-contacted one or more of Monique's treating providers, or taken one of a number of other steps set forth in SSR 12–2p, if he wanted more information to help him determine whether the criteria were satisfied. *See id*. Accordingly, the ALJ erred at step two.

## IV. **CONCLUSION**

The ALJ's decision to exclude Monique's fibromyalgia as a medically determinable impairment is not supported by substantial evidence. Accordingly, the case is remanded to the ALJ to properly evaluate plaintiff's FM under SSR 12-2p.

Aside from this early-stage misstep, the rest of the ALJ's written decision appears to be a thorough analysis of the medical evidence in the record. However, out of an abundance of caution, on remand the ALJ should consider anew <u>each successive step</u> of the sequential disability analysis. *See Cooper*, 2019 WL 1109573, at *5 (observing that the failure to find FM a medically determinable impairment impacts the later credibility analysis); *see also Buell*, 716 F. App'x at 602 ("If the ALJ had in front of him a valid diagnosis of fibromyalgia, it stands to reason that [claimant's] symptoms and behavior would have appeared in a different and more favorable light.").

Therefore, it is

ORDERED that

1. Monique's motion for judgment on the pleadings is GRANTED in part and DENIED in part;

2. The Commissioner's motion for judgment on the pleadings is DENIED;

3. The Commissioner's decision is VACATED; and

4. The case is remanded to the Commissioner for further administrative proceedings consistent with this Memorandum–Decision & Order.

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

Dated: June 4, 2019
       Utica, New York.

United States District Judge